# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO.: 5:18-CV-00054-DSC

| | |
|---|---|
| CHARLES BUFORD ARNING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM AND** |
| AETNA LIFE INSURANCE COMPANY, ) | **ORDER** |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on "Defendant's Motion for Summary Judgment" (Doc. 16) and "Plaintiff's Motion for Summary Judgment" (Doc. 18) as well as the parties' associated briefs, affidavits, and exhibits. See Docs. 16, 17, 18, 19, 20, 21 and 22.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this Motion is now ripe for the Court's determination.

Having carefully considered the parties' arguments, the record, and the applicable authorities, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is an action for declaratory and injunctive relief as well as payment of long term disability (LTD) benefits under to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001. The Court has jurisdiction over the controversy pursuant to 29 U.S.C. § 1132(e)(1). Plaintiff alleges a physical and mental disability. Taking the facts in the light most

favorable to Plaintiff, he was employed as President of Arndt & Herman Building Products Division (Arndt & Herman) of ECMD, Inc.

Plaintiff was a full-time employee of ECMD, Inc. and at all times was a covered beneficiary under its Long Term Disability Executives Plan (Plan). The Plan plainly states with respect to "Long Term Disability Benefit Eligibility: 'You will be considered disabled while covered under this . . . Plan on the first day that you are disabled as a direct result of a significant change in your physical or mental conditions and you meet all of the following requirements:' "(1) be covered by the Plan; (2) be under a physician's regular care; and (3) be disabled by illness or injury" as determined by Aetna's Test of Disability." (AR 272). The Test for Disability states, "You meet the test of disability on any day that: You cannot perform the material duties of your own occupation solely because of an illness, injury, or disabling pregnancy-related condition;. . .." Own occupation means "[t]he occupation you are routinely performing when disability begins, and is "viewed as it is normally performed in the national economy rather than for specific employers." (AR 288). Aetna has "discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under this Policy, the Certificate or any other document incorporated." (AR 1501).

On September 15, 2015 ECMD, Inc. admonished Plaintiff for failure to adhere to business hours and/or to adequately apprise his employer of his whereabouts and activities outside the office. (AR 674). Plaintiff received a memo on September 21, 2015 regarding issues with his work performance and the overall financial performance of the division. Prior to Plaintiff's termination Arndt & Herman was not performing well financially. (AR 675). On January 4, 2016, Plaintiff was terminated for poor performance.

2

Prior to his termination, Plaintiff underwent a series of medical procedures from 1973 to 2013 including inguinal hernia repair, left total hip replacement, right total knee replacement, right rotator cuff repair, right pectoralis tendon repair, and resection of left first rib secondary to a benign tumor, laminectomy of the lumbosacral spine to address left leg pain in 2008, and a laminectomy to address left leg and right hip pain in 2013. He continues to experience back, leg, and hip pain, pain and stiffness in his hands and wrists, and inguinal neuralgia. None of Plaintiff's injuries or medical procedures are work related. Following the laminectomy in 2013, Plaintiff experienced increased pain in his groin area. He was diagnosed by his treating physician, Dr. Hans Hansen, with lumbar degenerative disc disease (primary), inguinal neuralgia (secondary), and peripheral neuropathy (other). (AR 1412). The diagnosis indicated that Plaintiff was capable of light work, defined as "[e]xerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently." (AR 1413). A Capabilities and Limitations Worksheet from Dr. Hansen indicated Plaintiff could frequently lift up to twenty pounds.

On January 5, 2016, one day following his termination from ECMD, Inc., Plaintiff filed an application for LTD with Aetna. Neither party to this action raises an issue with Plaintiff filing for benefits after termination from his employment. At no point during his employment did Plaintiff apply for disability benefits. Plaintiff was notified by Aetna on January 8, 2016 that he was not eligible to file for LTD because he had not satisfied the ninety-day elimination period. Plaintiff became eligible to file for benefits on April 4, 2016. On March 28, 2016 Aetna requested a thirty-day extension to review Plaintiff's request. On May 10, 2016, Aetna issued a letter to Plaintiff denying his disability benefits. The letter stated, "[t]here is no support for impairment that would prevent you from performing the material duties of your occupation" as President as viewed in the

national economy. Plaintiff timely appealed the initial decision. Aetna assigned Dr. Rajesh Kannon, a specialist in Occupational Medicine, to review the appeal. Dr. Kannon's findings were based upon a complete review of the record including supplemented materials provided by Plaintiff on appeal. Aetna also conducted a two-day period of video surveillance of Plaintiff which revealed his ability to sit at a ninety-degree angle for thirty minutes. This observation conflicts with the treating physician's finding that Plaintiff could not sit at a ninety degree angle. Dr. Kannon stated:

> There is no credible evidence to restrict [Plaintiff's] sitting based on medical risk, however, taking into consideration of his consistent reports of pain and demonstrated ability while on surveillance the following restriction to sitting is reasonable and very permissive. Sitting restricted on frequent basis, with change of position for [five] 5 minutes every [thirty] 30 minutes for standing and walking.

A final administrative denial of Plaintiff's claim was issued on June 22, 2017.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The Rule provides procedures for establishing the presence or absence of any genuine dispute as to any material fact:

> (c) Procedures.
>
>> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>>
>>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

> purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

Although the moving party bears the initial burden of stating the basis for its motion and identifying what evidence demonstrates the absence of a genuine issue of material fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The facts must be viewed in the light most favorable to the non-moving party, and where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. See Ricci v. DeStefano, 557 U.S. 557, 585 (2009) (citations omitted).

"The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Coleman v. United States, 369 F. App'x 459, 461 (4th Cir. 2010) (citing Baber v. Hosp. Corp. of Am., 977 F.2d 872, 875 (4th Cir.1992)). The party asserting that a fact cannot be or is genuinely disputed must cite to particular materials

5

in the record, including depositions, documentary evidence, affidavits and declarations. Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

**B.      Abuse of Discretion**

When the Plan grants the fiduciary discretionary authority to interpret its terms, the court limits its review to whether the fiduciary abused its discretion in denying the claim. Bernstein v. Capital Care, 70 F.3d 783, 788 (4th Cir. 1995); Sheppard & Enoch Pratt Hospital, Inc. v. Traveler's Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994). The burden of proving that the fiduciary abused its discretion is on the plaintiff. Saah v. Contel Corp., 780 F. Supp. 311 (D. Md. 1991).

The Plan expressly grants Aetna the "discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under the Policy, the Certificate or any other documents incorporated." (AR 1501). The Fourth Circuit "will find discretionary authority in the administrator if the plan's language expressly creates discretionary authority." Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522-23 (4th Cir. 2000) (quoting Doe v. Group Hosp. & Med. Serv., 3 F.3d 80, 85 (4th Cir. 1993) (applying the abuse of discretion standard where the plan gave "full power and discretionary authority to control and manage the operation and administration of the Contract . . . [and] all powers necessary [in] . . . determining all questions relating to Employee . . . eligibility").

Here, the "plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan . . . a reviewing court may reverse the

6

denial of benefits only upon a finding of abuse of discretion . . ." Brogan v. Holland, 105 F. 3d 158, 161 (4th Cir. 1997). The denial of benefits will be upheld if it was a result of a "deliberate, principled reasoning process and . . . is supported by substantial evidence." Id. at 161. "Substantial evidence is more than a scintilla, but less than a preponderance." Hensley v. Int'l Bus. Machs. Corp., 123 F. App'x 534, 537 (4th Cir. 2004).

In determining whether a fiduciary abused its discretion in denying benefits, the Court considers eight factors:

> (1) the language of the plan; (2) the purpose and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000).

### III. DISCUSSION

**A.     Denial of Benefits Was Proper**

A fiduciary does not abuse its discretion so long as the decision is reasonable. Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000). Based upon a review of the eight *Booth* factors, the denial of Plaintiff's claim was not an abuse of Aetna's discretion.

**(1) Plan Language**

An ERISA claims administrator "is obliged to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of . . . [ERISA]," . . . and ERISA provides no exemption from this duty when it comes time to pay benefits." Kennedy v. Plan Adm'r for Dupont Sav. & Inv. Plan, 555 U.S. 285, 300 (2009) (citing 29 U.S.C. § 1104(a)(1)(D)).

Relying on a plain reading of the Plan, eligibility requires Plaintiff to (1) be unable to perform the material duties of his own occupation; (2) based on the duties as defined as the occupation is viewed in the national economy; and (3) Plaintiff's disability must be a direct result of a significant change in physical or mental conditions.

Plaintiff can perform the material duties of his occupation. He claims that he suffered from "intractable, inoperable nerve pain . . . render[ing] him unable to perform the material duties of his occupation" and in particular the ability to perform sedentary tasks. (Doc. 19, p. 2). However, based upon evidence provided by his own treating physician, the Functional Capacity Evaluation (FCE) report, video surveillance, and Dr. Kannon's peer review report, Plaintiff can perform at least sedentary work. Plaintiff's assertion that he is unable to sit and therefore unable to perform his occupation is in direct conflict with video surveillance that revealed his ability to sit for at least thirty minutes. Therefore, Plaintiff has failed to demonstrate that he is unable to perform the material duties of his occupation.

The national economy defines Plaintiff's material duties in the role of President as "occasional lifting/carrying up to 10 [ten] pounds, mostly sitting, with some brief periods of standing/walking." (AR 1406). Plaintiff must provide evidence supporting his inability to perform these tasks. As stated above, he has failed to do so.

8

Plaintiff did not experience a significant change in his physical or mental conditions prior to his termination. Plaintiff worked with his conditions, including pain while sitting, and consistently took pain medication for a period of two to three years. (Doc. 17 Part II (D)). Plaintiff's affidavit and documents submitted in support of his claim described ongoing but stable pain complaints and use of medications to alleviate his symptoms. (Doc. 17, Part II (C)). Therefore, Plaintiff did not experience a significant event, as required by the Plan, to be eligible for LTD benefits.

**(2) Furthers the Purpose and Goals of the Plan**

The goal of the Plan is to provide benefits according to terms of the group policy. The test for disability ensures that eligible employees receive LTD benefits. Therefore, Aetna's decision furthers the purpose and goals of the Plan.

**(3) Adequacy of the Materials Considered and the Degree to Which They Support the Denial**

Aetna's denial must be supported by substantial evidence. Substantial evidence is defined as more than a scintilla, but less than a preponderance. Hensley v. Int'l Bus. Machs. Corp., 123 F. App'x 534, 537 (4th Cir. 2004). A review of the record reveals that Aetna's decision was supported by substantial evidence that Plaintiff could perform the material duties of his occupation on a full-time basis.

Plaintiff experienced a similar or identical degree of pain over a two to three year period. The only change in Plaintiff's condition at the time of his claim was his termination from employment because of poor performance.

Aetna's physician reviewer considered all the medical records, Plaintiff's affidavit, and the video surveillance evidence. He provided specific reasons for why he disagreed and agreed with

9

the various restrictions and limitations offered by Plaintiff's physicians. As to a physical disability, the treating and reviewing physician disagreed on Plaintiff's use of his upper extremities, ability to sit, and sustainable work capacity. (AR 307). The Supreme Court in Black & Decker Disability Plan v. Nord held that a claim fiduciary "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," nor may a fiduciary be required "automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden or explanation when they credit reliable evidence that conflicts with a treating physicians evaluation." 538 U.S. 822, 834 (2003). Based upon video surveillance, Plaintiff sat for up to thirty minutes at a time while driving and eating at a restaurant. This is inconsistent with the treating physician's opinion on appeal that Plaintiff was unable to sit at a ninety-degree angle. (AR 391). In addition, the medical records consistently documented unremarkable neurological examinations of Plaintiff's extremities.

As to the extent that each document was reviewed, Aetna stated at the beginning of its final decision letter "[a]lthough every piece of information was taken into consideration in our review, not every document will be specifically referenced in this letter." (AR 1546). Therefore, Plaintiff's argument that all the evidence in the administrative record-and in particular the vocational assessment- was not considered is not persuasive. In fact, the reviewing physician noted in his report that he reviewed the vocational assessment. (AR 411). In addition, the Disability Appeal Consultant submitted an affidavit stating, "I considered all documents and information submitted by or on [Plaintiff's] behalf in support of his claim . . . obtained by Aetna during both the initial claim and upon his administrative appeal." (Doc. 16-2, p. 5).

There is no evidence in the record to support Plaintiff's claim of a lack of mental acuity resulting from his pain medication. Medical records from 2014 to 2016 consistently reported normal orientation, affect, and mental status; normal memory and cognition; and that [Plaintiff] was "alert and oriented." (See, e.g. AR 327-29; AR 334; AR 446; AR 449; AR 461; AR 498; AR 502; AR 568; AR 559; AR 688; AR 728; AR 739; AR 778; AR 1165); (See also, AR 1069) (reporting mental status the day after Plaintiff submitted his LTD claims as "orientation, memory, attention, language, and fund of knowledge were normal"; mood and affect were "appropriate, active, and alert, and interactive"; and he "exhibited normal mental processes."). As to the use of prescribed pain medication, Plaintiff affirmatively stated that he "took as little as he possibly could to take the edge off" so he did not become addicted or "have to pass out and stop working." (AR 20).

### (4) Interpretation is Consistent with Other Provisions of the Plan and Earlier Interpretations

Aetna's determination is based upon the plain language of the Plan and is consistent with other provisions and interpretations. The Plan unequivocally states that a claimant's occupation is defined by the national economy and he only meets the "Test of Disability" if he cannot perform the material duties of his occupation due to an injury or illness which results in a significant change in his physical or mental condition. Aetna applied the terms of the Plan as written. Therefore, the interpretation was consistent with other provisions of the Plan and earlier interpretations.

### (5) A Reasoned and Principled Decision-Making Process

Aetna accurately determined that Plaintiff's occupation, as performed in the national economy, is a sedentary physical demand occupation. (AR 1406). For the reasons stated in factor (3), Aetna's claim investigation included a reasoned interpretation of the objective facts and the analysis of those facts by medical professionals, information provided by Plaintiff's treating physician, and medical records submitted in support of his claim.

**(6) Consistent with Procedural and Substantive Requirements**

A court must follow Congress' command for adherence to the provisions of the written plan in resolving ERISA claims. See Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 63 (4th Cir. 1992). For the reasons stated in factor (4), the Plan is reasonably consistent with ERISA.

**(7) External Standard of Review**

A plain reading of the Plan language expressly grants Aetna the "discretionary authority to determine . . . to what extent eligible employees and beneficiaries are entitled to benefits . . .." (AR 1501). Therefore, the Fourth Circuit will find discretionary authority if the plan's language expressly creates discretionary authority. Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522-23 (4th Cir. 2000) (quoting Doe v. Group Hosp. & Med. Serv., 3 F.3d 80, 85 (4th Cir. 1993). A discretionary determination will not be disturbed if reasonable, even if the court would have reached a different conclusion. Smith v. Continental Cas. Co., 369 F.3d 412, 417 (4th Cir. 2004). Therefore, because the Plan expressly grants Aetna discretionary authority and for the above-mentioned reasons that support a deliberate and reasoned process of review with more than a scintilla of evidence to support the denial of benefits, Aetna did not abuse its discretion.

**(8) Conflict of Interest**

Aetna's structural conflict of interest occasioned by its dual role of evaluating and paying LTD claims is only "considered one factor, among many, in determining the reasonableness of the discretionary determination." Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359-59 (4th Cir. 2008). Plaintiff bears the burden of presenting "evidence tending to show that [this] dual role 'affected the benefits'" decision. Id. at 362. Aetna presented affirmative evidence of its efforts to ensure accurate claim decisions and reduce the potential for bias, including: the use of outside vendors to ensure the independence of peer review physicians, the separation of the claim and appeal units from each other and Aetna's finances, and the lack of monetary incentives for reviewers to make particular decisions. The conflict of interest facts "should prove less important where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision-making irrespective of whom the inaccuracy benefits." Metropolitan Life Ins. Co, v. Glenn, 554 U.S. 105, 117 (2008). Therefore, Plaintiff has failed to prove that the occasioned conflict of interest affected the benefits decision. Aetna took active steps to reduce potential bias and promote accuracy.

## IV. ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1. "Defendant's Motion for Summary Judgment" (Doc. 16) is **GRANTED**. "Plaintiff's Motion for Summary Judgment" (Doc. 18) is DENIED.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED ADJUDGED AND DECREED.**

Signed: July 18, 2019

David S. Cayer
United States Magistrate Judge